HIGGINS, Justice.
 

 Plaintiff instituted this action against her husband for a divorce on the grounds of adultery and prayed for the permanent custody of her two minor children and for alimony for their support.
 

 The original petition charged that the defendant committed adultery with a certain woman at her residence in West Standard Heights during the forenoon of November 26, 1934, and also set forth numerous acts of misconduct and adultery between the parties during 1932, 1933, and 1934. In a supplemental petition, the plaintiff alleged that defendant also committed the same act with the same party on January 15, 1934, in a wagon or house on wheels located in a field contiguous to the woman’s residence.
 

 The defendant entered a general denial to the original and supplemental petitions.
 

 There was judgment in favor of the plaintiff as prayed for and awarding alimony at the rate of $5 per week for the support of the children.
 

 The defendant appealed.
 

 The record shows that the husband of ■the co-respondent had charged his wife with having committed adultery with the defendant in their residence on November 26, 1934, and on that ground obtained the custody of his minor children by judgment of the district court. A few days before the instant case was called for trial on the merits, this man called on plaintiff’s attorney and informed him that he had reconciled with his wife and did not care to testify against her. The supplemental petition charging adultery on January 15, 1934, was then filed.
 

 When the case was called for trial on the merits, plaintiff placed on the stand the husband of the alleged co-respondent, for the purpose of proving the alleged adulterous connection of November 26, 1934. This witness admitted that he had, in a previous judicial proceeding, charged his wife with having illicit relations with the defendant at the time and place alleged, and had secured the custody of his children from her because of her immoral conduct. He states that while he testified in that proceeding that he had secreted himself in the attic of his home and had caught his wife and the defendant in the immoral act, since that time he had reconciled with his wife and would be embarrassed to testify against her. He ventured to say that he had made the accusation against his wife for the purpose of obtaining custody of his children, but that the statement was untrue.' Being warned that he could be prosecuted for perjury and did not have to answer the questions, because he could claim his constitutional privilege not to incriminate himself, he then asserted his right and did not testify further.
 

 Plaintiff’s attorney then testified that he was surprised at the conduct of the witness and, although the plaintiff had told counsel of the alleged misconduct of January 15, 1934, he did not allege those facts,
 
 *869
 
 because plaintiff, who would have to be called as a witness to that occasion, did not wish to take the stand against her husband, due to her feeling for her children, and because counsel was of the opinion that the other evidence was adequate to prove the case. But, when the husband of the co-respondent informed him that he did not wish to testify against his wife, counsel thought it better to make the allegations with reference to the misconduct of January 15, 1934.
 

 Several immediate neighbors testified that the defendant almost daily visited the home of the alleged co-respondent both when her husband was at home and while he was away, each visit lasting from one hour to half a day; that when he went there the doors were locked and sometimes the windows were closed; 'that the children were sent to play in the yard; that she was seen in scant attire while he was around the premises; that she frequently went to the picture show with the defendant; and that the couple visited the house on wheels in the field which defendant was cultivating, which was adjacent to the woman’s home. Two of the neighbors testified that there was a heated argument between the woman and her husband at their residence in the forenoon of November 26, 1934, and that the defendant hurriedly left the place.
 

 The defendant admitted, under cross-examination, that he was present in the home when this argument took place between the man and his wife because of the defendant, and that he asked the husband if he was trying to “frame him,” when he was accused of misconduct with his wife. He denied that there was any wrongdoing between them. He further admitted almost daily visits to the home, and that after the woman and her husband separated, he gave her a job as waitress in his restaurant. He failed to give any explanation of his frequent visits, except that he was a friend of the family.
 

 The evidence with reference to the alleged misconduct of January 15, 1934, consists of the testimony of the plaintiff and a Mrs. Tice, who worked as a waitress in defendant’s restaurant. Plaintiff states that on January 14, 1934, because of her suspicions of her husband’s relations with the woman, she went, unexpectedly, to her residence and gained admission into the house by asking the woman for a drink of water, and went through the building to the kitchen, from where she saw her husband leaving by the back entrance.
 

 Mrs. Tice and plaintiff testified that on January 15, 1934, in the forenoon, they went to the house on wheels located in the field; that they went upon the front gallery and upon opening the door and looking in they saw defendant and the woman in bed in their under garments; that they both jumped up, and he exclaimed, “Now, I suppose you are satisfied”; that they (the witnesses) immediately left the place; and that thereafter plaintiff and her children went to live with her relatives.
 

 The defendant denied that he was guilty of any wrongdoing and produced several witnesses, who testified that the house on wheels had been sold and-moved in September, 1933, and therefore was not on
 
 *871
 
 the premises on January 15, 1934, when the alleged adultery was said to have been committed. Plaintiff likewise produced several witnesses who -stated that the house on wheels was on the premises' at that time. Some of the plaintiff’s and defendant’s witnesses say that there were two of these houses on wheels located in the field, which the defendant was cultivating, although two of the defendant’s witnesses state that this second house on wheels had been practically demolished in the fall of 1933.
 

 Defendant also sought to discredit the testimony of Mrs. Tice, by attempting to show that she stated that she was going to receive “plenty of money” after the trial, but apparently the trial judge disbelieved this and, we think, properly so.
 

 The alleged co-respondent never testified, although it appears that she was available.
 

 Counsel for defendant attacks the testimony of plaintiff and Mrs. Tice on the ground that plaintiff failed to allege in her original petition the alleged adulterous connection of January 15, 1934, although it is admitted that she told her counsel of it, prior to the time that the suit was filed. He argues that this conclusively shows that the alleged incident of January 15, 1934, was an afterthought and purely imaginary.
 

 The testimony of these two witnesses is impressive and convincing and strongly corroborated by the testimony of several disinterested witnesses as to plaintiff’s acts of indiscretion with this woman. There is nothing in the record which would justify us in disregarding their testimony, particularly since the trial court believed them.
 

 We are of the opinion that the judgment of the district judge is correct, and it is therefore affirmed, at appellant’s costs.
 

 O’NIELL, C. J., absent.